**Paul WRIGHT and Uninsured Employers' Fund, Appellants,**

**v.**

**Ronald Alton FARDO and Workmen's Compensation Board, Appellees.**

Court of Appeals of Kentucky.

May 25, 1979.

Discretionary Review Denied Oct. 23, 1979.

A. J. Jolly, Newport, for appellant, Wright.

Michael Richardson, Uninsured Employers' Fund, Frankfort, for appellant, Uninsured Employers' Fund.

Kevin E. Quill, Newport, for appellee, Fardo.

Before COOPER, LESTER and VANCE, JJ.

COOPER, Judge.

Paul Wright, a full-time vocational instructor, contracted for various home improvement jobs in his spare time. Ronald Fardo, a full-time railroad employee, occasionally aided Wright in the performance of electrical work. On January 3, 1977, the Workmen's Compensation Board awarded Fardo compensation for an injury he sustained while helping Wright wire two rooms. On September 23, 1977, the Campbell Circuit Court affirmed the Board's finding of coverage. Wright, in this appeal, contends that he and Fardo were not in an employer-employee relationship within the meaning of the Workmen's Compensation Act. Wright also argues that in the event we agree with the circuit court as to his status of an employer under the Act, that the Board and the court erroneously computed Fardo's average weekly wage.

Paul Wright held a full-time position as a machinery vocational instructor at the Alexandria Vocational School twelve months a year. As a sideline, he took on home improvement jobs which involved carpentry, masonry and electrical work. Wright did not advertise nor maintain an office in connection with this sideline, but depended on word of mouth to inform the community that he engaged in this extra work. Wright required payment by the hour for the home improvement work, plus what he spent for materials. For these efforts, in addition to his teaching, he grossed $3,000.00 to $4,000.00 a year.

When Wright had an involved electrical project, he sometimes sought the aid of a helper. Wright generally called on Ronald Fardo for help, but Ronald's brother, Ronald's father and Johnny Haines had also worked with Wright. All that Fardo knew of electrical work he had learned from Wright.

Fardo had a full-time job with the Baltimore and Ohio Railroad as a car inspector. Fardo's part-time work with Wright, which stretched over a ten year period, did not occur with regularity, with the exception of one summer, and even then Fardo did not work every day.

During the Christmas vacation of the vocational school, Wright undertook to wire two new rooms in a neighbor's house. After a couple of days, Wright realized that he would need assistance so he got in touch with Fardo. Fardo appeared on the job site on December 28, 1974. Although the two did not discuss salary, Wright always paid Fardo five dollars an hour, the same hourly rate that Wright charged for his own services.

Wright and Fardo had worked on the installation for several hours when they started to run a by-pass for a water heater. Wright supplied Fardo with a wrench and told him to climb up on a ladder and hook the entrance cable into the wires coming from an outside pole. Wright then went into the basement to switch over from the old service box to the new service box so that they could make the change as quickly as possible. While Fardo proceeded to put in a split volt securing the entrance cable to the line wire, he made contact with the wrench to a live wire. Due to the ensuing shock, Fardo fell from the ladder and landed with his left leg twisted under him.

The Board found that Fardo had suffered a 20% permanent compensable disability arising out of his employment by Wright. The Board used KRS 342.140(5) to compute Fardo's average weekly wage. KRS 342.-140(5) states that,

[w]hen the employe is working under concurrent contracts with two (2) or more employers and the defendant employer has knowledge of such employment prior to the injury, his wages from all such employers shall be considered as if earned from the employer liable for compensation.

Applying this formula, the Board determined that twenty-seven dollars was Fardo's average weekly wage for his part-time work, which the Board added to $240.00, Fardo's average weekly wage at the Baltimore & Ohio Railway Company. The Board awarded Fardo compensation for his total disability from December 28, 1974 to October 9, 1975.

The Campbell Circuit Court modified the Board's award by excluding Fardo's average weekly wage as a railroad employee, on the basis that KRS 342.650(4) exempted coverage of the disability of railroad employees. The court further changed the Board's award by computing Fardo' average weekly wage while employed by Wright as if Fardo had worked a full five day week at five dollars an hour which came to an average weekly wage of $200.00.

Fardo supports the existence of a covered employer-employee relationship by pointing out that the Act does not specifically exclude employment of the sort involved here by a person such as Wright, and by contending that a consideration of the factors set out in *Ratliff v. Redmon*, Ky., 396 S.W.2d 320 (1965), weighs in favor of Fardo as an employee rather than as an independent contractor.

KRS 242.630 gives the coverage of employers; KRS 342.640 lists the coverage of employees; and KRS 342.650 contains those employees exempt from coverage. The wording in the coverage sections has a broad sweep. KRS 342.630(1) mandatorily makes subject to the chapter "[a]ny person, other than one engaged solely in agriculture, that has in this state one or more employes subject to this chapter." In KRS 342.640(1), the employees subject to the chapter encompasses,

[e]very person, including a minor, whether lawfully or unlawfully employed, in the service of an employer under any contract of hire or apprenticeship, express or implied, and all helpers and assistants of employes whether paid by the employer or employe, if employed with the knowledge, actual or constructive, of the employer.

KRS 342.650 on the other hand provides for a few narrow exceptions not relevant here. However, despite the apparent inclusiveness of the language of coverage and exclusion, the Supreme Court in *Fields v. Twin City Drive-In*, Ky., 534 S.W.2d 457 (1976), exempted the independent contractor from responsibility under the Act, because despite the far reaching language of the coverage

sections, the legislature did not indicate an intention to depart from the traditional notion that an independent contractor did not come within the definition of employee.

The statutes lend no support to Wright's claim that he did not engage in an employment situation encompassed by the Act. Numerous states have eliminated coverage of casual employment by legislation. Larson, in his treatise, *Workmen's Compensation Law* § 51.11 (1978), points out that these states have built in the casual employment exception for administrative reasons "[s]ince the keeping of accounts and payroll records, the systematic provision of insurance, and the proof of past earnings all assume regular and sustained employment." Wright has made an argument for noncoverage similar to the rationale behind the casual employment statutes. The Kentucky Workmen's Compensation Act does not contain a provision for exclusion of casual employment. With the 1973 revision of the Act, the legislature repealed the minimum number of employees requirement and extended application of the Act to an employer with one employee. If a trend can be gleaned from the General Assembly's inaction and action, the progression has proceeded in favor of inclusion of more work relationships within the ambit of the Act.

Wright forcefully asserts policy reasons as to why the Act should not cover a person who works a sideline and who occasionally asks another, also regularly employed elsewhere, for assistance on a specific task. Wright urges that if coverage extends to this type of arrangement, it will curtail social intercourse between neighbors and deprive an individual negligently injured of his common law tort remedies. Wright also emphasizes the practical problems of obtaining insurance and passing the cost of the insurance on to the consumer. While Wright has enumerated factors which admittedly militate against coverage, these well taken points better address themselves to why the legislature should amend the Act than to how we should decide this case in light of the language of the current law. As Justice Lukowsky commented in his concurring opinion in *Transport Motor Express, Inc. v. Finn*, Ky., 574 S.W.2d 277, 285 (1978),

[t]he people of this Commonwealth, acting through their duly elected legislators, have the right to select an illogical, expensive or even foolish menu of workmen's compensation. This court is not a maitre d'hotel with power to change the menu on other than constitutional grounds.

KRS 342.630 and KRS 342.640 contain the sole expression of the employment relationship necessary for application of the Act apart from the exceptions, not relevant to coverage here, listed in KRS 342.650. KRS 342.630 and KRS 342.640 offer little in the way of explanation. Basically KRS 342.630 defines an employer as one who has an employee while KRS 352.640 defines an employee as one who works for an employer under a contract of hire. These statutes do not reach the independent contractor or the joint venturer because from the inception of workmen's compensation laws, the independent contractor and the joint venturer have been recognized as statuses outside of the employer-employee relationship embraced by the Workmen's Compensation Act. See *Fields, supra*.

■ Wright, however, urges that *Crush v. Kaelin*, Ky., 419 S.W.2d 142 (1967), stands for the proposition that we can determine coverage of workmen's compensation by analyzing whether the spirit of the Act encompasses each employment. In *Crush, supra*, Crush hired Kaelin, a regular employee of a building contractor, to build a vacation cottage on a lot Crush owned. Kaelin sought out two other carpenters employed by his contracting firm to help with the work. The three carpenters worked in their off-time and Crush paid them by the hour. Crush, a salesman, did not have carpentry experience. Kaelin received an injury while laboring for Crush, and the suit which followed raised the issue of the applicability of the Workmen's Compensation Act. The Court acknowledged that the breadth of the employer definition section then in effect, KRS 342.005, could arguably

include Crush, but the Court concluded that "the social objectives of workmen's compensation in shifting the risk of injury from the workman to the employer, and thence to the consuming public" did not reach "the domain of an employer's private household affairs." *Crush, supra,* at 145. Although we appreciate that Wright has asked that we look to the social impact of determining him an employer under the Act, still the result he requests intrudes into the province of the legislature. *Crush, supra,* rested on the premise that apart from technical distinctions, Crush was a consumer, not a producer. Once again, the court had firm ground on which to stand, because even though it took into account the policy behind workmen's compensation, a precept thereof is that the employer carry on a business that provides the occasion for the employee's injury. *Larson, supra* § 50.21. Crush did not have a cottage construction business. In the case before us, Wright engaged in a trade, although not on a full-time basis. We know of no judicial exception to coverage of workmen's compensation brought on by the infrequency of the employer's business or by the difficulty of obtaining workmen's compensation insurance at a rate profitable to the business. So, within the present statutory and judicial framework, Fardo was Wright's employee unless Fardo meets the criteria of an independent contractor or joint venturer.

■ It does not take a thorough inquiry into the circumstances of this case to detect that Fardo neither meets the test of an independent contractor nor of a joint venturer. Wright had taught Fardo the electric wiring trade by instructing him on the job. Wright procured the home improvement jobs. He only decided whether he needed Fardo's aid after he had begun an electrical project. Although Fardo received the same hourly rate as Wright, Wright determined whether Fardo working at all. When Fardo did work for Wright, Fardo functioned to enable Wright to finish a wiring job too big for Wright to handle by himself. Fardo served as a helper to Wright and followed Wright's instructions. We can draw no other inference than that

Fardo was an employee of Wright on the day of the accident. *Chambers v. Wooten's IGA Foodliner,* Ky., 436 S.W.2d 265 (1969); *Wallins Creek Lumber Co. v. Blanton,* 228 Ky. 649, 15 S.W.2d 465 (1929).

We have decided that coverage exists by following the plain wording of the coverage sections of the Act and the reasoning of the case law which pertains to coverage. However, our inclination may have been against coverage if coverage depended upon exact application of a particular provision of KRS 342.140 concerning the computation of compensation. The trouble that we have in connecting coverage to a method of compensation lies in the directive of KRS 342.-140 that the compensation computation have as its basis the employee's average weekly wage. The employment relationship of Fardo to Wright did not occur weekly nor did Fardo or Wright have an expectation that they would work together any less sporadically than they actually did. KRS 342.140 operates on the assumption that the employment either has continued over a period of weeks or that the employer and employee contemplated that the employment would durate for a number of weeks. Yet, the specific purpose of KRS 342.140 deals with the computation of compensation, not coverage of the Act. Therefore, we must apply the coverage sections which require that Wright incur the responsibility of compensation for the occupational disability of his injured employee, Fardo. *Transport Motor Express, Inc. v. Finn,* Ky., 574 S.W.2d 277, 283 (1978).

■ Larson, in his treatise on workmen's compensation, discusses the problem of setting the wage basis for an employee with a full-time job who gets injured while performing in another isolated employment. Larson proposes that such an employee's compensation should reflect his future loss of earnings in his regular employment. Of course, the context in which Larson views the situation takes for granted that an insurance company will bear the cost of compensation and in turn spread the loss to the industry. Larson has not envisioned ab-

sorption of the cost of compensation by an employer who, by the very nature of his business, could not practically incorporate the expense of insurance coverage into the price he charged for the services of his business. *Larson, supra,* § 60.21. It probably would never even dawn on this employer that his occupation required workmen's compensation. However, we need not address the question of whether Fardo's salary with the railroad should be included in determining his average weekly wage, because we agree with the circuit court that his pay as an employee of the railroad does not enter into the calculation. KRS 342.-650(4) exempts railroad employees from coverage of the Act. Although *Holman Enterprise Tobacco Warehouse v. Carter,* Ky., 536 S.W.2d 461 (1976), involved a somewhat different aggregation question, the Court at p. 463 cited the following quotation from 99 C.J.S. *Workmen's Compensation* § 294 with approval:

> *Employments not within act, or not insured.* In case of concurrent employments, each employment considered must be such as would come within the scope of the act; and where in his employment by one employer the employee is not covered by compensation insurance, his salary therein will not be included with his salary in another employment with another employer, in which he is covered by such insurance, in determining the basis of the payment of compensation for an injury in the latter employment.

Thus, KRS 342.140(5), the concurrent employment section, does not take effect under the authority of *Holman Enterprise Tobacco Warehouse, supra.*

■ While the court below correctly ruled KRS 342.650(4) applicable, it erred in computing Fardo's average weekly wage as if he worked for Wright full-time at $5.00 an hour. As we have already noted, Fardo had no reason to anticipate that he would work for Wright other than intermittently. Furthermore, Fardo knew by actual experience that he would work for Wright erratically. It appears to us that the facts which transpired and not a fiction should form the basis for arriving at Far-

do's average weekly wage. Fardo's average weekly wage should be calculated by following KRS 342.140(1)(d) which states that,

> the average weekly wage shall be the wage most favorable to the employe computed by dividing by thirteen (13) the wages (not including overtime or premium pay) of said employe earned in the employ of the employer in the first, second, third, or forth period of thirteen (13) consecutive calendar weeks in the fifty-two (52) weeks immediately preceding the injury.

The judgment is affirmed in part and reversed and remanded in part with directions that the circuit court return the case to the Board for the purpose of awarding compensation after it determines the average weekly wage according to KRS 342.140(1)(d).

VANCE, J., concurs.

LESTER, J., dissents.

LESTER, Judge, dissenting.

I would agree with my brothers as to the method of computation of workmen's compensation which they invoked in this appeal if I agreed that the "after hours handy man", "the occasional employer" or merely the "odd job entrepreneur" was within the contemplation of the legislature when it enacted KRS 342.640(1) without an exclusion pertaining to the above type of worker. In *Fields v. Twin City Drive-In,* Ky., 534 S.W.2d 457 (1976), the Supreme Court summarily removed independent contractors from coverage under the Workmen's Compensation Act and I would do the same with regard to an employee such as Ronald Fardo.

This Court directed counsel to furnish evidence as to whether workmen's compensation insurance coverage could be had for an employee such as the appellee herein. The documents presented to this Court indicated that a minimum of $500 per year would be the premium and if placed in the Assigned Risk Plan, there would be a sur-

charge of 8%. To emphasize the difficulty of acquiring such coverage, I quote the Assistant Deputy Commissioner, Property and Casualty Division, Department of Insurance, to the effect that:

I find it hard to conceive of an insurance company writing a policy when they do not know who the employees will be, what their remuneration will be, nor what the hazardness of the employment will be.

I further invite attention to KRS 342.790 which provides that the Attorney General can institute an action against any "employer" who falls within the provisions of the Workmen's Compensation Law and fails to acquire proper insurance when the Uninsured Employers' Fund has had to pay a claim. Under the facts of another case, it is conceivable that an employer such as Wright could be cast into the role of a bankrupt when we recall that compensation must be paid during the term of disability.

I do not believe the legislature intended to include the casual worker of the part-time employer and therefore, I respectfully dissent.