Stephen Joseph HALE, Appellant,

v.

BELL ALUMINUM; Hon. Irene Steen, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 98–SC–548–WC.

Supreme Court of Kentucky.

Dec. 17, 1998.

Case Ordered Published by Supreme Court Feb. 18, 1999.

Douglas W. Becker, Timothy G. Hatfield, Becker, Farris & Gallagher, Louisville, KY, for appellant.

William P. Swain, Douglas A. U'Sellis, Boehl, Stopher & Graves, Louisville, KY, for appellee/Bell Aluminum.

## OPINION OF THE COURT

This matter is before the Court as an appeal by claimant from an opinion of the Court of Appeals reversing the decision of the Workers' Compensation Board (Board). The Board affirmed the Administrative Law Judge's (ALJ's) decision that claimant was totally occupationally disabled and entitled to maximum benefits.

The sole issue on appeal concerns the manner in which claimant's average weekly wage is to be calculated.

Claimant testified that he had begun doing jobs for Bell Aluminum (Bell) in 1990 and that he worked "on and off for 6–7 years" as a subcontractor installing aluminum siding. Further, he related that he usually received $52 for each square foot installed. Moreover, claimant related that Bell contracted with the home owners and provided the materials, and that it then subcontracted with him to provide the labor. Evidence was presented indicating that claimant maintained workers' compensation insurance for himself through Bell via a 12 percent deduction from his paycheck.

In addition, claimant also testified that from 1993 to 1995 he operated his own aluminum siding company, Stephen & Son, and that Bell was aware of such fact. For jobs arising with Stephen & Son, claimant stated that he contracted directly with the property owners, as well as providing the materials and labor. Claimant related that he carried liability coverage for his own company, but that he did not carry workers' compensation insurance.

On August 25, 1995, claimant incurred work-related feet and ankle injuries, and surgery was necessitated, as a result of falling some 20 feet while working on a job for Bell. Contested issues before the ALJ included: (1) extent and duration, (2) average weekly wage, (3) temporary, total disability, and (4) unpaid medical expenses.

With regard to the issue of average weekly wage, an unsigned federal income tax return was introduced which showed that claimant's earnings for 1995 amounted to $14,466.45. It appears that claimant would complete his own jobs in between those for which he was hired by Bell. Claimant's earnings for the 13 week-period preceding his injury were:

| | |
|---|---|
| Bob Cole—Weller Avenue 5/23/95 – 6/6/95 | 2,038.76 |
| Domino Partners—Bluegrass 6/30/95 – 7/3/95 | 167.67 |
| Bell Aluminum—Middleton 6/30/95 – 8/1/95 | 1,367.14 |
| Gatchell's—Market Street 7/27/95 – 8/19/95 | 5,966.28 |
| Bell Aluminum—Wickland 8/23/95 – 8/25/95 | 766.00 |

Resultantly, the ALJ found that:

Based upon the record as a whole, including the restrictions assigned Plaintiff by both Drs. Schiller and Shea, Plaintiff's education level, and prior work experience, it is the finding of this ALJ that Plaintiff is 100% occupationally disabled in accordance with *Osborne v. Johnson*, Ky., 432 S.W.2d 800 (1968).

Additionally, the issue of the medical expenses contested herein is decided in Plaintiff's favor and the Defendant Employer shall pay same, if they have not already done so.

Plaintiff's average weekly wage is hereby found to be sufficient for maximum benefits, based upon his earning[s] with the Defendant Employer for the best 13 weeks preceding his injury, regardless of whether or not his self-employment income is considered. Thus, Plaintiff shall be entitled to maximum benefits for 1995.

In addition, the ALJ overruled the employer's subsequent petition for reconsideration.

The employer appealed to the Board concerning the issues of: (1) the ALJ's award of medical expenses for the treatment of claimant's hernia, and (2) the ALJ's determination that claimant was entitled to maximum, permanent, total disability benefits.

The Board affirmed the ALJ's decision in both respects. Regarding calculation of claimant's average weekly wage, the Board held that:

KRS 342.140 contains various formulae under which average weekly wages are to be determined based upon varying fact situations. It also contains specific provisions for certain types of occupations[s] such as seasonal or in the case of volunteer fire fighters, policemen, and civil defense members. KRS 342.140(1)(a), (b), and (c) are inapplicable to this claim since Hale's wages were based upon output and not fixed by the week, month, or year. Under KRS 342 .140(1)(d), Hale would clearly be entitled to the maximum benefit in that the wages he earned during the most favorable 13 week period immediately preceding his injury divided by 13, the wages he earned from May 23, 1995 to August 25, 1995, equal $732.82.

Under KRS 342.140(e), applicable to a claimant who had been in the employ of the employer less than 13 weeks immediately preceding the injury, Hale's average weekly wage would be computed under paragraph (d), as above, and the same figure would be reached. The same result would be obtained under KRS 342.140(1)(f). No contention was made that Hale's occupation was exclusively seasonal or that his wages should be calculated based upon subsections 3, 4, 5, 6, or 7 to

KRS 342.140. Bell refers us to no provision under which one would calculate Hale's wages based solely upon his earnings while in its employment. We are unable to identify any section or subsection of KRS 342.140 that could be applied to Hale's fact situation under which an average weekly wage less than that which would qualify him for the maximum benefit could be reached. Therefore, in our opinion, the ALJ has not erred in awarding Hale maximum disability benefits.

The employer appealed to the Court of Appeals which reversed the decisions of the Board and the ALJ. Namely, it held that claimant's income from his own enterprise known as Stephen & Son was not to be included in computations under KRS 342.140 since it has previously been determined that an independent contractor is not an employee and does not come within the scope of the Workers' Compensation Act. Further, relying on *C & D Bulldozing Co. v. Brock*, Ky., 820 S.W.2d 482 (1991), the Court of Appeals concluded that claimant's average weekly wage should be computed under KRS 342.140(1)(e), as his employment with Bell was consistently intermittent. Thus, the Court of Appeals remanded the matter to the ALJ for further proceedings.

■ On appeal to this Court, claimant agrees that since his earnings were fixed by output, and as he had worked on the instant job for Bell for only a few days, KRS 342.140(1)(e) is the most appropriate subsection to utilize for computation of his average weekly wage. However, he contends that the ALJ did not err by considering the whole of his earnings for the 13 weeks preceding his injury, when determining that he was entitled to maximum benefits, because whether his earnings from other jobs is taken into account directly, or indirectly, as proof of what he would have earned had he been employed by Bell for a full thirteen weeks prior to his injury, he is entitled to maximum benefits. Lastly, he submits that the present case reveals a unique factual situation and that the average weekly wage of $164.09, as calculated by the Court of Appeals, is certainly not a fair reflection of his lost earning capacity, when his actual average weekly earnings were $733.82.

Conversely, the employer contends that claimant's earnings from his work as a self-employed independent contractor are not "wages" which can be considered for purposes of determining his average weekly wage, as such employment is outside the scope of the Workers' Compensation Act. Hence, the employer asserts that when considering only the earnings claimant received from Bell in the 13 weeks preceding his injury, his average weekly wage is $164.09, and, thus, he is not entitled to maximum benefits.

■ Therefore, the issue becomes whether claimant's actual earnings as an independent contractor per his separate aluminum siding business are to be included when calculating his average weekly wage under KRS 342.140(1), although independent contractors do not generally fall within the ambit of workers' compensation coverage.

Concededly, KRS 342.140(5) states that "[wh]en the employee is working under concurrent contracts with two (2) or more employers and the defendant employer has knowledge of the employment prior to the injury, his wages from all the employers shall be considered as if earned from the employer liable for compensation." However, it has previously been held that a worker's wages from a concurrent employment relationship are not to be included in the computation of the worker's average weekly wage pursuant to KRS 342.140(5) when such employment has been specifically excluded from coverage under the Act. *See Wright v. Fardo*, Ky.App., 587 S.W.2d 269 (1979), (regarding a railway employee); *Holman Enterprise Tobacco Warehouse v. Carter*, Ky., 536 S.W.2d 461 (1976), (regarding a farm worker). Cited with approval within those cases is a portion of 99 C.J.S. *Workmen's Compensation* § 294, pg. 1022, which states that:

> *Employments not within act, or not insured.* In case of concurrent employments, each employment considered must be such as would come within the scope of the act; and where in his employment by one employer the employee is not covered by compensation insurance, his salary

therein will not be included with his salary in another employment with another employer, in which he is covered by such insurance, in determining the basis of the payment of compensation for an injury in the latter employment.

*Wright, supra,* at 274.

Since it has previously been determined that independent contractors are not employees and, thus, fall outside the scope of the Workers' Compensation Act, we agree with the Court of Appeals that claimant's earnings as an independent contractor per his own aluminum siding company, Stephen & Son, should not be added to those wages earned per Bell in order to compute his average weekly wage. *See Fields v. Twin City Drive–In,* Ky., 534 S.W.2d 457 (1976).

■ Next we come to the question of which section of KRS 342.140 should be employed to calculate claimant's average weekly wage, keeping in mind that his wages were fixed by his output. We again agree with the Court of Appeals concerning the fact that subsection (e) of KRS 342.140(1) should be utilized in computing claimant's average weekly wage. Such application allows for a true reflection of claimant's actual weekly earning capacity with Bell. Namely, not unlike the situation in *C & D Bulldozing, supra,* claimant's employment periods with Bell were sporadic due to the nature of the employment relationship, and it is only appropriate to conclude that claimant's wages would have continued to be the same based on the pattern of his actual employment with Bell. Therefore, we adopt as our own a portion of the Court of Appeals' opinion relating to such issue:

In the recent case of *C & D Bulldozing Co. v. Brock,* Ky., 820 S.W.2d 482 (1991), the Kentucky Supreme Court held that where an employee's employment can be properly characterized as consistently intermittent, his average weekly wage is to be calculated according to KRS 342.140(1)(e). *C & D Bulldozing,* 820 S.W.2d at 486. In that case, the record showed that "7 weeks out of a 13–week period constituted a normal period of service." In holding that the claimant's average weekly wage was to be calculated according to KRS 342.140(1)(e), the Court stated:

It is unfortunate that there is not a provision which is more narrowly tailored to accommodate consistently intermittent employment. However, the compensation scheme is based upon a determination of average weekly wages, and we must apply the statute as best we can to varying circumstances.

Claimant's average weekly wage is $127.35 as calculated by dividing by 13 the total he earned during the 7 weeks he worked throughout the 13 calendar weeks immediately preceding his last injurious exposure.

*C & D Bulldozing,* 820 S.W.2d at 486.

We believe this case is controlled by *C & D Bulldozing.* Like the claimant in *C & D Bulldozing,* "consistently intermittent employment" was a normal part of Hale's employment with Bell. The record shows that during the thirteen weeks preceding his injury, Hale worked for Bell for approximately five (5) weeks total. There was no evidence in the record which would show that it was unusual for Hale to work for Bell for several weeks, work for himself for several weeks, and then return to Bell. Thus, we are persuaded that Hale's average weekly wage is to be calculated by dividing what Hale received from Bell during the five week period by 13. This results in an average weekly wage of $164.09. As this is not greater than the maximum average weekly wage, the ALJ erred in finding that Hale was entitled to maximum benefits.

Having considered the parties' arguments on appeal, the decision of the ALJ is reversed and remanded for findings consistent with this opinion.

Accordingly, the decision of the Court of Appeals is hereby affirmed, and this matter stands remanded to the ALJ for further proceedings.

All concur.