Lloyd HUFF, Appellant,

v.

SMITH TRUCKING; Robert L. Whittaker, Director of Special Fund; J. Landon Overfield, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 99–SC–0360–WC.

Supreme Court of Kentucky.

Dec. 16, 1999.

Thomas G. Polites, Wilson, Sowards, Bowling, & Costanzo, Lexington, for Appellant.

Joel W. Aubrey, Ferreri, Fogle, Pohl, & Picklesimer, Lexington, for Appellee Smith Trucking.

David W. Barr, Labor Cabinet—Special Fund, Frankfort, for Appellee Whittaker.

## OPINION OF THE COURT

The sole issue presented by this workers' compensation appeal concerns the proper method for calculating the average weekly wage of a worker who was employed for fewer than 13 weeks when he was injured. KRS 342.140(1)(e).

Claimant worked regularly as an underground coal miner until he was laid off in December, 1992. In January, 1993, William Smith, the owner of Smith Trucking (the defendant-employer), bought timber rights to a parcel of land and hired claimant as a timber cutter. Claimant and Smith were the only persons working on the tract. The company's usual business was hauling coal, but it had been unable to procure hauling contracts. There was evidence that this was the company's first venture into the logging business. The employer anticipated that the project would take 15–20 days of actual work; however, it was expected to extend over a

longer period because the work could only be performed in good weather. There was no indication that the employer had secured other timber rights or expected to have other employment for the claimant after the project was completed. Claimant was paid a daily wage of $75.00 for the days that he worked. The Administrative Law Judge (ALJ) determined that claimant had worked for five days over a two-week period when he sustained a head injury on January 18, 1993. The company ceased operations after the accident and subsequently went bankrupt. Claimant did not work after the accident, and he alleged total occupational disability.

The ALJ awarded a period of TTD benefits followed by a 50% permanent, partial occupational disability. Noting that both the logging operation and the employment had lasted for a total of two weeks, the ALJ indicated that he found the question of average weekly wage to be the most troublesome in the case. The ALJ noted that, in *C & D Bulldozing v. Brock*, Ky., 820 S.W.2d 482 (1991), the very nature of the employment was sporadic; whereas, here, the short period of employment had more to do with the injury than with any other factor. For that reason, dividing earnings of $375.00 by 13, as advocated by the employer, seemed inappropriate on these facts. The ALJ concluded that the most appropriate way to measure average weekly wage would be to divide the total salary ($375.00) by the number of weeks worked (2) to produce a figure of $187.50.

Claimant appealed, and the employer cross-appealed. The Workers' Compensation Board (Board) rejected claimant's argument that KRS 342 .140(1)(f) should be applied to these facts. However, noting that the fact that claimant was hired to work for only 15–20 days did not negate the applicability of KRS 342.140(1)(e), the Board reversed the ALJ. As applied to these particular facts, the Board construed KRS 342.140(1)(e): 1.) to provide that the average weekly wage should reflect what claimant would have earned had he been employed for a full 13 weeks in the same occupation before being injured, and 2.) to permit evidence concerning whether work was available to workers employed by other employers. The claim was remanded to the ALJ for further findings and for a determination of claimant's average weekly wage pursuant to KRS 342.140(1)(e).

On remand, the ALJ determined from claimant's testimony that timber cutting work was available in the area where he resided and that, typically, it paid $75.00 per day. Based upon these findings, the ALJ concluded that the average weekly wage was $375.00. The employer appealed, asserting that this method of calculation ignored the actual circumstances of the employment relationship and that the ALJ had based the calculation on the fiction that claimant would have been employed every day for the full 13–week period. The Board rejected the employer's argument and affirmed, after which employer appealed.

■ The Court of Appeals observed that the purpose of KRS 342.140(1)(e) is to compute an average weekly wage which is a realistic reflection of the worker's earning capacity. The court noted that claimant was employed on a sporadic basis for a limited period of time, and there was no evidence concerning the consistent availability of timber cutting work. The employer had presented evidence that it harvested timber only when it had a contract to do so and when the weather allowed. The court concluded that there was no evidence concerning the practices of other employers and no substantial evidence that claimant would have worked every day and earned $375.00 per week; therefore, the decision of the Board was reversed.

With regard to the proper method for calculating claimant's average weekly wage, the Court of Appeals noted that the injury occurred shortly after the employment began and that claimant's earnings from the employment did not reflect his actual earning capacity over a 13–week period. The court also noted that neither

KRS 342.140(1)(e) nor *Brock* seemed to have contemplated this particular situation. Nonetheless, it was persuaded by the employer's argument that claimant's total earnings of $375.00 must be divided by 13 weeks to yield an average weekly wage of $28.85.[1]

█ This appeal by the claimant raises what essentially is a fairness argument. He emphasizes that the manner in which the Court of Appeals applied KRS 342.140(1)(e) equates his earning capacity over a 13–week period in the employment to what he earned over two weeks and ignores the fact that more work was available had he not been injured. He asserts that the Board was correct in permitting consideration of the wages earned by timber cutters who worked for other employers and that its decision should not have been reversed.

The employer has advocated the computation adopted by the Court of Appeals. The crux of the employer's argument is that claimant should not be considered a continuous, regular employee because he was hired for a specific job of very limited duration. For that reason, the employer insists that claimant's average weekly wage should not be computed in the same manner as that of a worker hired for continuous, regular work.

The applicable version of KRS 342.140 provides, in pertinent part:

The average weekly wage of the injured employe at the time of the injury . . . shall be determined as follows:

(1) If at the time of the injury which resulted in death or disability. . . .

. . . .

(d) The wages were fixed by the day, hour, or by the output of the employe, the average weekly wage shall be the wage most favorable to the employe computed by dividing by thirteen (13) the wages (not including overtime or premium pay) of said employe earned in the employ of the employer in the first, second, third, or fourth period of thirteen (13) consecutive calendar weeks in the fifty-two (52) weeks immediately preceding the injury.

(e) The employe had been in the employ of the employer less than thirteen (13) calendar weeks immediately preceding the injury, his average weekly wage shall be computed under paragraph (d), taking the wages (not including overtime or premium pay) for such purpose to be the amount he would have earned had he been so employed by the employer the full thirteen (13) calendar weeks immediately preceding the injury and had worked, when work was available to other employes in a similar occupation.

(f) The hourly wage has not been fixed or cannot be ascertained, the wage for the purpose of calculating compensation shall be taken to be the usual wage for similar services where such services are rendered by paid employes.

KRS 342.140(1)(e) applies to injuries sustained after fewer than 13 weeks' employment. It utilizes the averaging method set forth in KRS 342.140(1)(d) and attempts to estimate what the worker's average weekly wage would have been over a typical 13–week period in the employment by referring to the actual wages of workers performing similar work when work was available. As was recognized in *Brock*, the goal of KRS 342.140(d) and (e) is to obtain a realistic estimation of what the injured worker would be expected to earn in a normal period of employment. In the instant case, the logging business had not yet operated for 13 weeks; therefore, there was no 13–week period from which to estimate an average weekly wage for the employment. Although *Brock* and *Wright v. Fardo*, Ky.App., 587 S.W.2d 269 (1979), are instructive concerning the

1. The employer conceded, however, that TTD benefits were payable at the minimum rate of $78.88 per week pursuant to KRS 342.730(1)(a) and KRS 342.740.

purpose and mechanism of the statute, neither case is dispositive of these facts.

In *Brock,* although the worker was hired more than 13 weeks before the injury, he had actually worked for fewer than 13 weeks when injured because work was not always available. The Court determined that KRS 342.140(1)(e) applied. *Brock* indicates that KRS 342.140(1)(e) "includes the consideration of a normal 13–week period of hire so that the employee's compensation will reflect his future loss of earnings in his regular employment." The Court determined that despite the fact that work had not been available every week during the 13–week period which immediately preceded the worker's injury, the 13–week period was normal for the employment.

In *Fardo,* the employment was consistently intermittent and spanned a 10–year period. Therefore, the application of KRS 342.140(1)(d) yielded a reasonable estimation of the worker's anticipated future earnings from the employment. In that case, the court noted that Kentucky is not among the states that have exempted casual labor from coverage and that Kentucky no longer has a "minimum number of employees" requirement.

Although KRS 342.140(1)(e) may be less than artfully drafted with regard to a casual labor situation, it is clear that casual laborers are not exempted from workers' compensation coverage under the Act and that no special provision has been enacted for computing their average weekly wage. The same holds true for workers employed by newly established businesses which have been in operation for less than 13 weeks when a work injury occurs. KRS 342.140(1)(e) relies upon the earnings of employees in a similar occupation during the 13–week period immediately preceding the injury when determining what the injured worker would have earned for the full 13–week period had he been so employed. Because the logging business had not yet operated for 13 weeks when claimant was injured, and it ceased operation

after the injury, there was no 13–week period from which to estimate what claimant would have been expected to earn had the defendant-employer conducted a logging operation for the full 13 weeks preceding his injury.

■ As we recognized in *Brock,* the computation of average weekly wage pursuant to KRS 342.140(1)(e) must take into consideration the unique facts and circumstances of each case. In doing so, the Court of Appeals' approach in the instant case was to view claimant's earnings over a two-week period as though that was all he would reasonably have been expected to earn had the employment existed for the 13 weeks immediately preceding his injury. We are not persuaded that the finding implicit in the calculation set forth by the Court of Appeals is supported by any substantial evidence; therefore, we reverse.

In view of the unique facts which are present in this case, we conclude that the Board properly construed KRS 342.140(1)(e) as authorizing a consideration of evidence concerning the wages earned by timber cutters who worked for other employers in the area where claimant lived and concerning the availability of such work. We are persuaded that claimant's uncontradicted testimony sufficiently demonstrated that timber cutting work was available at $75.00 per day in the area in which he resided. It is clear, however, that in arriving at an average weekly wage of $375.00 pursuant to KRS 342.140(1)(e), the ALJ and the Board failed to consider the effect of the weather upon the average weekly wage that claimant could reasonably have expected to earn as a timber cutter during the 13 weeks preceding his injury. The only evidence in that regard came from claimant's actual experience and indicated that the weather permitted timber cutting approximately 50% of the time. In view of that uncontradicted evidence, we, like the Court of Appeals, conclude that there was no substantial evidence to indicate that claimant would have

worked every day during the relevant 13–week period.

Claimant was employed as a timber cutter at the time he was injured, and his average weekly wage should reflect what he could reasonably have expected to earn in that occupation. *Brock, Fardo.* Based upon the evidence which was presented, we conclude that over the 13 week-period immediately preceding his injury claimant could have reasonably expected to earn an average weekly wage of $187.50 as a timber cutter had he been so employed during that period. We have arrived at this figure by applying KRS 342.140(1)(e) to the evidence which was available as follows: $75.00 per day $\times$ 5 days per week $\times$ 50% (weather factor) = $187.50.

The decision of the Court of Appeals is reversed, and the claim is remanded to the ALJ for the entry of an award of 50% permanent, partial disability which is based upon an average weekly wage of $187.50.

All concur.