**AFFORDABLE ALUMINUM, INC. Appellant**

v.

**James Howard COULTER; J. Landon Overfield, Administrative Law Judge; and Workers' Compensation Board Appellees**

No. 2001–SC–0941–WC.

Supreme Court of Kentucky.

June 13, 2002.

Douglas A. U'Sellis, Louisville, Counsel for Appellant.

Thomas W. Davis, Thomas W. Davis, P.S.C., Glasgow, Counsel for James Howard Coulter.

## OPINION OF THE COURT

This appeal concerns the method for calculating the average weekly wage of a worker who is injured after being employed for only three weeks. KRS 342.140(1)(e). Relying on *Hale v. Bell Aluminum*, Ky., 986 S.W.2d 152 (1998), the Workers' Compensation Board (Board) reversed an Administrative Law Judge's (ALJ's) finding concerning the claimant's average weekly wage on the ground that the calculation included pre-employment earnings from a period in which the claimant was not covered by workers' compensation insurance. After determining that the disputed earnings were not included in the calculation, the Court of Appeals reversed the Board and reinstated the finding. The employer appeals.

The claimant had worked in the siding business since 1988. Most of the time, he worked by the hour or the piece for a contractor. It was unclear from the record whether he was covered by workers' compensation insurance when he did so. He indicated that sometimes he worked for his brother in Hart County but that, normally, he worked in Glasgow as a subcontractor for Smith Siding. He also testified that occasionally he bid on contracts himself and worked as a self-employed contractor, without workers' compensation coverage.

At the time of his injury, the claimant installed siding for Affordable Aluminum, Inc., (Affordable) as a subcontractor. An insurance premium was deducted from his earnings, and he was covered under the employer's workers' compensation policy. About two months before he was injured, a severe hail storm had resulted in an unusual demand for siding work in the Bowling Green area where he worked. He testified that subcontractors were paid $15.00 per square to remove damaged siding and $50.00 per square to install new. His first contact with Affordable was through James Maxwell who worked for the company as a subcontractor. Maxwell and the claimant agreed to work together. After a 14% workers' compensation premium was deducted, they split the income on a 60/40 basis, with Maxwell receiving 60% because he provided the tools. At some point, Maxwell quit, and the claimant began to work for Affordable as a subcontractor. He was injured on August 6, 1998, approximately three weeks later. At the hearing, the claimant testified that he had begun working for the employer in April, 1998, later explaining that he had only hauled away some shingles and was paid in cash.

With regard to his earnings, the claimant testified that after becoming a subcon-

tractor for Affordable, he had received a total of $3,758.02 but had paid Jerry Fields $818.00 to help him. However, the ALJ later determined that the total also included $535.97 that Maxwell had paid him for work that he performed before July 17, 1998. After subtracting those two amounts, the difference that remained was $2,404.05.

Greg Tucker, a co-owner of Affordable, testified that the company began working in the Bowling Green area in March, 1998, with production lasting from May through August of 1998. He indicated that the company used subcontractors for all of the siding work in that area and introduced photocopies of checks that were paid to the claimant. The weekly totals are as follows:

| | |
|---|---|
| July 27, 1998 | $1,001.03 |
| August 3, 1998 | $1,760.40 |
| August 10, 1998 | $ 460.62 |
| TOTAL: | $3,222.05 |

Tucker agreed that the claimant had paid Mr. Fields $818.00 for helping him do the work. Thus, according to Affordable's records, the claimant's earnings for the three-week period that he worked as a subcontractor were $2,404.05.

The claimant testified that siding work was available in the area during the four 13–week periods immediately preceding his injury at the rate of $40.00 per square and that he had installed 20 to 25 squares per week as a subcontractor for Smith Siding, earning from $800.00 to $1,000.00 per week. Furthermore, the hail storm that occurred a few months before his injury had increased both the availability of work and the wages. He testified that he worked six days a week, every week and that there was sufficient work for him to do so for more than 13 weeks after his injury, indicating that he was hired for an indefinite period of time. In contrast, Mr. Tucker indicated that his business is located in Louisville and that he knew nothing about the availability of construction and remodeling work in the Bowling Green area at the time.

Addressing the matter of average weekly wage, the ALJ noted that the amounts and dates of payment were undisputed. Furthermore, the ALJ noted the claimant's unrebutted testimony concerning what he could have earned in the 10–week period before being employed by Affordable as a siding subcontractor. Thus, the ALJ determined that the claimant was capable of earning $800.00 per week for the ten weeks before he became a subcontractor for Affordable and that he earned $2,404.05 from Affordable. The ALJ concluded, therefore, that during the 13–week period preceding his injury, he would have earned a total of $10,404.05, for an average weekly wage of $800.31.

The employer maintained on appeal that the ALJ erred by considering evidence of the claimant's earnings as an independent contractor at a time when he was not covered by workers' compensation insurance. *Hale v. Bell Aluminum, supra.* Agreeing with the employer, the Board determined that the ALJ erred by imputing earnings of $800.00 per week to the weeks before the claimant began to work for Affordable as a subcontractor because he was not insured at the time. The Board noted, however, that there was substantial evidence concerning the availability of siding work at $65.00 per square and a dearth of evidence that weather conditions affected a worker's earnings. Thus, it determined that the ALJ was authorized to project the claimant's actual earnings in the employment onto a 13–week period and, thereby, to arrive at an average weekly wage of $801.35. However, noting its lack of authority to make such a finding of fact, it remanded the claim for additional proceedings. Again, the employer appealed.

Rejecting the employer's assertion that *Hale v. Bell Aluminum, supra,* controlled these facts, the Court of Appeals reversed the Board, and this appeal followed. The employer continues to maintain that KRS 342.140 deals only with wages earned prior to a work-related injury and while the worker is covered by workers' compensation insurance. It emphasizes that *Hale* did not turn on the fact that the individual was earning concurrent wages but rather on the fact that "non-covered" wages must be excluded from the average weekly wage calculation. Therefore, it asserts that the claimant's pre-injury earnings may not be considered when calculating his average weekly wage. Instead, the employer maintains that the employment must be viewed as being consistently intermittent and that the claimant's earnings for the 13–week period must be limited to the $2,404.05 earned from Affordable, resulting in an average weekly wage of $184.93.

When calculating the average weekly wage of an individual who has recently begun an employment, KRS 342.140(1) provides that if at the time of injury:

(e) The employee had been in the employ of the employer less than thirteen (13) calendar weeks immediately preceding the injury, his average weekly wage shall be computed under paragraph (d), taking the wages (not including overtime or premium pay) for such purpose to be the amount he would have earned had he been so employed by the employer the full thirteen (13) calendar weeks immediately preceding the injury and had worked, when work was available to other employees in a similar occupation.

As the employer points out, KRS 342.140 bases the average weekly wage calculation on the pre-injury earnings of the worker or ·of other employees in a similar occupation. It is apparent, however, that nothing in this statute looks to earnings from a prior employment. Thus, it is not material whether the individual was working before entering the employment. ·See *Central Kentucky Steel v. Wise,* Ky., 19 S.W.3d 657 (2000). Likewise, it is not material whether an individual had workers' compensation coverage in a prior employment because earnings from a prior employment are not considered when calculating the individual's average weekly wage for the employment in which he was injured. We recognize, however, that an individual's earnings in a prior, similar employment may sometimes be an indication of what the individual would have been likely to earn in 13 weeks of the employment in which he was injured.

The injured subcontractor in *Hale v. Bell Aluminum, supra,* had worked for Bell for 6–7 years and paid a premium for workers' compensation coverage that was based upon 12% of his earnings with Bell. Yet, he sought to receive a greater income benefit than those earnings would warrant by including concurrent earnings from uninsured self-employment. We determined, however, that the uninsured earnings could not be used to increase his average weekly wage for compensation purposes. Furthermore, in view of the fact that he had worked for Bell during only 5 of the 13 weeks before his injury and the lack of evidence that such a pattern of employment was atypical, we viewed the nature of the employment as being consistently intermittent. Thus, we determined that the 5 weeks of earnings should be divided by 13 to arrive at the average weekly wage under KRS 342.140(1)(d) and (e).

In *Huff v. Smith Trucking,* Ky., 6 S.W.3d 819 (1999), we explained that the goal of KRS 342.140(1)(e) was to obtain a realistic estimation of what the injured worker would have expected to ·earn during a normal period of employment. We

also determined that absent evidence of what the worker would probably have earned in the actual employment, the ALJ was free to rely upon evidence concerning the availability of similar work in the area and the applicable wage. There, the ALJ relied upon the worker's unrebutted testimony concerning both factors.

Here, the employer offered no evidence concerning the regularity with which it had work for its subcontractors in the 13 weeks preceding the claimant's injury or concerning their earnings. Whereas, the claimant's unrebutted testimony established that a siding subcontractor in the area would be able to earn from $800.00 to $1,000.00 per week during the year before his injury and that work was available on a regular basis during that time. By determining that as an independent siding contractor, the claimant was capable of earning $800.00 per month for 10 weeks and of earning $2,404.05 in the following 3 weeks, the ALJ arrived at an average weekly wage of $800.31.

Contrary to the employer's assertion, this appeal does not involve a pattern of employment that was shown to be consistently intermittent, for there was no evidence that the quantity of work or the weather kept a subcontractor from working on a regular basis during the relevant period. Furthermore, it is undisputed that the claimant's premium for coverage while working for Affordable was based upon the maximum benefit. Thus, unlike the worker in *Hale v. Bell Aluminum, supra,* the claimant has not sought to base his income benefit upon a greater wage than he earned in the three weeks that he was a subcontractor for Affordable.

The employer correctly asserts that earnings from non-covered employment may not be considered in the average weekly wage calculation. For the purposes of KRS 342.140(1)(e), the relevant inquiry on these facts focuses upon what the claimant would have earned as an insured subcontractor had he worked for the employer during the full 13 weeks before his injury. As the finder of fact, the ALJ was authorized to consider the available evidence, to draw reasonable inferences from it, and to make reasonable findings. KRS 342.285.

The claimant's earnings from Affordable in the 3 weeks before his injury averaged $801.35 per week. Although the ALJ could have projected those earnings onto the entire 13–week period, the evidence did not compel using such a method. The claimant's unrebutted testimony established that a siding subcontractor in the area could expect to earn from $800.00 to $1,000.00 per week during the 10–week period preceding the employment. Based upon this testimony, the ALJ determined that the expected earnings would be $800.00 per week, and Affordable points to no evidence to compel a finding that an insured subcontractor would have earned any less. We conclude, therefore, that neither the $800.00 figure nor the resulting average weekly wage of $800.31 was unreasonable under the evidence. Neither should have been disturbed on appeal. *Special Fund v. Francis,* Ky., 708 S.W.2d 641, 643 (1986).

The decision of the Court of Appeals is affirmed.

All concur.