Ronnie A. BALL, Appellant,

v.

BIG ELK CREEK COAL CO., INC.; Thomas A. Nanney, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 1999–SC–1106–WC.

Supreme Court of Kentucky.

Aug. 24, 2000.

Robert J. Greene, Kelsey E. Friend Law Firm, Pikeville, for Appellant.

Barry Lewis, Melissa L. Moore Lewis, Lewis and Lewis Law Offices, Hazard, for Appellee Big Elk Creek Coal Co., Inc.

## OPINION OF THE COURT

This workers' compensation appeal concerns the proper method for applying KRS 342.730(1)(c)2. with regard to post-injury earnings. 1996 Ky. Acts (1st Ex.Sess.) ch. 1, § 30.

Claimant sustained a work-related injury on February 1, 1997. He testified that at the time he was injured he earned $10.50 per hour and worked 58 hours per week. The parties stipulated that his average weekly wage was $581.54.

Following the injury, claimant returned to work with a different employer on August 20, 1997. At the time of the hearing, he testified that he was earning $11.00 per hour. Wage records for the post-injury employment indicated that claimant worked anywhere from 2 to 20.5 hours of overtime per week and that he received periodic bonuses. They also indicated that claimant's average weekly wage exceeded that which was stipulated for the date of injury in two out of the three most recent quarters. Claimant's most recent earnings statement indicated that for the week ending on May 30, 1998, his gross earnings were $701.25.

The Administrative Law Judge (ALJ) determined that claimant retained the functional capacity to return to the same type of employment that he had engaged in before his injury and awarded benefits for permanent, partial disability based upon an impairment rating of 10%. KRS 342.730(1)(b). Noting the increase in claimant's hourly wage and the fact that his post-injury wage had exceeded the stipulated wage in two out of the three most recent quarters, the ALJ concluded that KRS 342.730(1)(c)2. must be applied in computing the weekly benefit to which he was entitled. As a result, the weekly benefit was reduced by one-half. The award also provided that full benefits would be restored during any period that the present employment ceased.

Claimant appealed. His argument was that a determination of whether KRS 342.730(1)(c)2. applies should be made each week and based upon the worker's actual earnings for the week. The Workers' Compensation Board (Board) rejected the argument and affirmed the award. In its opinion, the Board indicated that the plain language of the statute supported the method which the ALJ had employed. The Court of Appeals affirmed the Board and adopted the Board's opinion as its own. This appeal by the claimant followed.

■ Claimant asserts that his wage exceeded the stipulated average weekly wage in only 8 of the 41½ weeks of the post-injury employment. His argument is that the intent of KRS 342.730(1)(c)2. is for the weekly benefit to be reduced only in those weeks that a worker is employed at a wage

which equals or exceeds the stipulated wage. He asserts that the Court of Appeals has affirmed a construction of KRS 342.730(1)(c)2. which penalizes him because the average of his wages in two of the three quarters between his injury and the hearing equaled or exceeded the stipulated pre-injury wage. He also complains that the Court of Appeals' interpretation of KRS 342.730(1)(c)2. fails to take into account post-award changes in a worker's average weekly wage. He argues that the ALJ should have ordered reduced benefits only during those 8 weeks that his wage equaled or exceeded the stipulated average weekly wage and during any week in the future that his wage equals or exceeds that amount.

The employer points out that in *Whittaker v. Robinson*, Ky., 981 S.W.2d 118 (1998), the Court construed the April 4, 1994, amendment to KRS 342.730(1)(b) which contained a similar provision for limiting the benefits of a worker who returned to work at a "wage" which was equal to or greater than the pre-injury "average weekly wage." There, the Court rejected the argument that the worker's pre- and post-injury hourly pay rate should be compared and concluded that the legislature intended for a comparison of the pre- and post-injury average weekly wage. The employer asserts that the purpose of both the 1994 and 1996 amendments was to limit the amount of income benefits paid to a worker who sustained a functional impairment which did not decrease the amount of income he was able to earn from work. *See Whittaker v. Johnson*, Ky., 987 S.W.2d 320 (1999). It concludes by pointing out that the construction of KRS 342.730(1)(c)2. which the claimant advocates would require the employer or its carrier to determine each week whether an injured worker's earnings equaled or exceeded the pre-injury wage. The employer asserts that such a requirement would be unduly burdensome.

As effective December 12, 1996, and on the date on claimant's injury, KRS 342.730(1)(c) provided, in pertinent part, as follows:

2. If an employee returns to work at a weekly wage equal to or greater than the average weekly wage at the time of injury, the weekly benefit for permanent partial disability otherwise payable under paragraph (b) of this subsection shall be reduced by one-half (½) for each week during which that employment is sustained. During any period of cessation of that employment, temporary or permanent, for any reason, with or without cause, payment of weekly benefits for permanent partial disability during the period of cessation shall be restored to the rate prescribed in paragraph (b) of this subsection.

3. Notwithstanding the provisions of KRS 342.125, a claim may be reopened at any time during the period of permanent partial disability in order to conform the award payments with the requirements of subparagraph 2. of this paragraph.

▉▉▉ Having considered the arguments of the parties and the language employed in KRS 342.730(1)(c), we are persuaded that the legislature did not contemplate a weekly review of a worker's earnings and a weekly adjustment of benefits as the claimant advocates. It has long been established that the purpose of awarding income benefits to injured workers is to provide an ongoing stream of income to enable them to meet their essential needs and those of their dependents. As we explained in *Whittaker v. Robinson* and *Whittaker v. Johnson* when considering a similar provision, it is apparent that limiting the amount of income benefits being paid to those workers who have sustained no present loss of income is consistent with the purpose of the benefit. The method which the legislature has chosen to determine a worker's income from a particular employment is the average weekly wage, the computation of which is set forth in KRS 342.140. Rather than focusing upon a particular week which may or may not accurately reflect the worker's earning

capacity in the employment, KRS 342.140 requires the computation of an average of the worker's earnings over a period of 13 consecutive calendar weeks.

■ In view of the foregoing, we read KRS 342.730(1)(c)2. as providing that the pre-and post-injury average weekly wages should be compared and that, in those instances where the post-injury average weekly wage equals or exceeds the pre-injury average weekly wage, benefits for permanent, partial disability should be reduced by one half for so long as that post-injury employment is sustained. Contrary to claimant's assertion that such an interpretation fails to take into account changes in post-injury earnings, KRS 342.730(1)(c)3. provides that during any period of cessation of that employment, temporary or permanent, for any reason, with or without cause, a reopening and the restoration of full benefits is authorized notwithstanding the provisions of KRS 342.125. Furthermore, KRS 342.125(3) excepts a reopening for the purpose of conforming an award as set forth in KRS 342.730(1)(c)2. from the time limitations contained therein.

In the instant case, the ALJ determined that claimant's post-injury average weekly wage exceeded his pre-injury average weekly wage. Claimant has pointed to no evidence which required a different conclusion. Under those circumstances, the ALJ properly reduced the permanent, partial disability benefit to which claimant would otherwise have been entitled by one-half when making the award. The award properly indicated that if there is a cessation of that employment, claimant is entitled to reopen the award and to have the full benefit restored during the period of cessation.

The decision of the Court of Appeals is affirmed.

All concur.