RENDERED: APRIL 9, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0547-WC

DEBORAH ROBBINS FRENCH                                                  APPELLANT

v.                PETITION FOR REVIEW OF A DECISION
                 OF THE WORKERS' COMPENSATION BOARD
                        ACTION NO. WC-17-97124

REV-A-SHELF; HON. R. ROLAND                                            APPELLEES
CASE, ADMINISTRATIVE LAW
JUDGE; AND WORKERS'
COMPENSATION BOARD

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, DIXON, AND K. THOMPSON, JUDGES.

ACREE, JUDGE: Deborah Robbins French[1] appeals the Workers' Compensation

Board's (the "Board") March 23, 2020 opinion, affirming in part and remanding in

part the administrative law judge's ("ALJ") award of benefits. She argues the

Board erred by: (1) vacating the ALJ's award of temporary total disability

---

[1] The administrative law judge and Workers' Compensation Board both refer to her as "Robbins." Accordingly, we do the same.

("TTD") benefits; and (2) vacating the ALJ's enhancement of her permanent partial disability ("PPD") benefits by two. Upon careful consideration, we affirm.

## BACKGROUND

On January 13, 2017, Robbins sustained injuries while working as a line leader at Rev-A-Shelf. On that day, she tripped over a misplaced pallet, causing her to fall on her outstretched left arm. She suffered injuries to her left wrist, left elbow, and left shoulder. Robbins received medical treatment but continued working until April 25, 2017. She ultimately underwent left shoulder surgery on June 2, 2017, performed by Dr. Michael Salamon.

Robbins filed a workers' compensation action against Rev-A-Shelf. A final hearing was conducted before the ALJ on July 25, 2019. Among other things not relevant to this appeal, the parties contested TTD and PPD benefits. The ALJ found that Robbins returned to work full time on October 2, 2017[2] and continued working until her resignation on September 17, 2018. She earned approximately $1 less per hour during this time. The ALJ further found that TTD benefits had been paid to Robbins from April 26, 2017 through August 29, 2017, while she was recovering. However, because she did not return to work until

---

[2] Robbins' testimony regarding her return to work is inconsistent. In deposition, she testified that she returned to work on August 30, 2017 and continued working until her resignation on September 17, 2018. However, at the hearing, she testified, "They sent me back [to work] I want to say somewhere in August or September. And since I couldn't perform the job duties, he put me back off from work until November."

October 2, 2017, the ALJ concluded she was entitled to additional TTD benefits from August 30, 2017 through October 2, 2017.

The ALJ next awarded PPD benefits based upon an impairment rating of 10%. Because Robbins retained the functional capacity to return to the type of employment that she had engaged in before her injury, the ALJ did not apply the three-times multiplier. However, the ALJ found that toward the end of her employment at Rev-A-Shelf, beginning in July 2018, she began providing private healthcare for an elderly paraplegic individual, earning $7.00 per hour, working twenty hours per week. This concurrent employment increased her average weekly wage so that she was earning equal or greater wages than she was pre-injury. And, because she no longer earned equal or greater wages – due to her resignation from Rev-A-Shelf – the ALJ enhanced her PPD benefits by two, beginning from the date of her resignation on September 17, 2018. KRS[3] 342.730(1)(c)2.

Rev-A-Shelf moved for reconsideration, asserting Robbins returned to work on August 30, 2017 instead of October 2, 2017 and, therefore, was not entitled to TTD benefits. The ALJ noted that Robbins' deposition testimony supported Rev-A-Shelf's contention, but he found the following testimony persuasive as to when she returned to work:

---

[3] Kentucky Revised Statutes.

Q. Okay. How long were you off work after your surgery?

A. They sent me back I want to say somewhere in August or September. And since I couldn't perform the job duties, he put me back off work until November.

(Record (R.) at 384-85.) The ALJ also cited a document reflecting post-injury earnings, which "indicates no earnings in August 2017, September 2017, October 2017 nor November 2017."[4] The petition for reconsideration was ultimately denied; Rev-A-Shelf appealed to the Board.

The Board concluded the ALJ's award of TTD benefits was predicated upon an improper analysis. It first noted the inconsistencies in Robbins' testimony relating to the day she returned to work. In deposition, she stated:

Q. Then you were off work from April 26, 2017 until August 29, 2017. Does that sound right?

A. Sounds right.

Q. Okay. You received some workers' compensation payments for the time that you were off work from April to August; is that right?

A. Yes Ma'am.

Q. Did you miss time from work as a result of your accident and not receive workers' compensation benefits?

A. No, Ma'am.

---

[4] The document referred to does not indicate no earnings were made during this time frame. Instead, no records were submitted for these months.

Q. So, you were paid for the time you were off?

A. Yes, Ma'am.

Q. So then, you went back to work for Rev-A-Shelf somewhere around August 30, 2017 and you continued working until your resignation in 2018; is that right?

A. Yes, Ma'am.

Then, at the hearing, Robbins testified:

Q. Okay. How long were you off work after your surgery?

A. They sent me back I want to say somewhere in August or September. And since I couldn't perform the job duties, he put me back off work until November.

. . . .

Q. Following your work accident and your surgery that Dr. Salamon did, you went back to work in August of 2017, correct?

A. Correct.

Q. And you continued working until October of 2018; is that correct? I have you resigned somewhere around October 27, 2018.

A. I was thinking it was September, but - - I'm not exactly sure of the date.

(R. at 426-27.)

The Board concluded:

-5-

Although the ALJ cited to Robbins' hearing testimony, he did not reference her previous testimony, or for that matter, the discrepancy in her testimony at the hearing. The ALJ also referenced post-injury wage records submitted by Rev-A-Shelf. While those records indicate Robbins' earnings starting near the end of December 2017, they alone do not establish that she has no earnings prior to that date. On remand, the ALJ must provide additional findings supporting his determinations. If the ALJ in fact determines from the evidence Robbins did not return to work at the end of August 2017, he must provide a basis for his determination based upon the entirety of the evidence. If he determines Robbins indeed retuned to work, the ALJ must perform the analysis set forth above.[5]

(R. at 435.)

The Board also vacated the ALJ's enhancement of Robbins' PPD benefits by the two-times multiplier, holding:

KRS 342.140(5) states, "[w]hen the employee is working under concurrent contracts with two (2) or more employers **AND the defendant employer has knowledge** of the employment prior to the injury, his or her wages from all the employers shall be considered as [if] earned from the employer liable for compensation." (emphasis added). As noted by Rev-A-Shelf, there is no evidence it was ever notified of Robbins' concurrent employment. Robbins bore the burden of proving Rev-A-Shelf was aware of her concurrent earnings, but there is no evidence establishing she sustained her burden. While KRS 342.140(5) concerns pre-injury concurrent employment, we believe satisfying this requirement is equally true in calculating post-injury wages. We note the holding in Ball v. Big Elk Creek Coal Co., Inc., 25 S.W.3d 115 (Ky. 2000) requires pre-injury and post-injury wages to be calculated

---

[5] The Board laid out the appropriate analysis for entitlement to TTD benefits for the ALJ to follow if, on remand, he determines Robbins returned to work on August 30, 2017.

similarly. Therefore, it would appear the requirements for applying concurrent wages pursuant to KRS 342.140(5) equally applies in both situations.

(R. at 436).

Additionally, it found that Robbins failed to establish whether her "patient sitting activities" were as an employee or as an independent contractor. And, because money earned as an independent contractor does not fall within workers' compensation coverage, she could not claim these earnings as concurrent employment. This appeal followed.

## STANDARD OF REVIEW

Our review of an opinion of the Workers' Compensation Board is limited. We only reverse the Board's opinion when "the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *W. Baptist Hospital v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992). In reviewing the Board's opinion, we look to the ALJ's opinion. The ALJ's findings of fact will not be disturbed if supported by substantial evidence. *Wolf Creek Collieries v. Crum*, 673 S.W.2d 735 (Ky. App. 1984). And, the ALJ, as fact-finder, possesses the discretion to judge the credibility of testimony and weight of evidence. *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky. 1985). Our review proceeds accordingly.

-7-

## ANALYSIS

On appeal, Robbins contends the Board erred in vacating the ALJ's award of TTD benefits and the enhancement of her PPD benefits. We will address each issue in turn.

### TTD Benefits

Temporary total disability "means the condition of an employee who has not reached maximum medical improvement from an injury and has not reached a level of improvement that would permit a return to employment." KRS 342.0011(11)(a). The Board, citing *Trane Commercial Systems v. Tipton*, laid out the appropriate analysis for an entitlement to TTD benefits when an employee has returned to some form of employment:

> "[I]t would not be reasonable to terminate the benefits of an employee when he is released to perform minimal work but not the type [of work] that is customary or that he was performing at the time of his injury." *Central Kentucky Steel v. Wise*, 19 S.W.3d at 659. However, it is also not reasonable, and it does not further the purpose for paying income benefits, to pay TTD benefits to an injured employee who has returned to employment simply because the work differs from what she performed at the time of injury. Therefore, absent extraordinary circumstances, an award of TTD benefits is inappropriate if an injured employee has been released to return to customary employment, *i.e.* work within her physical restrictions and for which she has the experience, training, and education; *and* the employee has actually returned to employment.

481 S.W.3d 800, 807 (Ky. 2016).

The question before this Court is whether the ALJ's finding that Robbins returned to work on October 2, 2017 is supported by substantial evidence. We conclude it is not.

We first look at the ALJ's order awarding TTD benefits. According to the "summary of evidence":

> [Robbins] indicated she continued working after her accident until April 25, 2017 at which time she was off work through August 30, 2017 and was released to regular duty work on October 2, 2017. [Robbins] worked at full duty from October 2, 2017 through September 17, 2018.

The ALJ opined that he relied on this testimony in support of his finding. This is the only evidence in the ALJ's order relating to her return date.

The most substantial evidence in this testimony is Robbins' statements that she was "released to regular work" and worked at "full duty" starting October 2, 2017.[6] Although this testimony supports a finding that she returned to *full duty* on this date, it does not preclude the possibility that she returned to work at a previous date, possibly performing less than her regular job functions. Her initial statement that she "was off work through August 30, 2017" certainly leaves open the door to this scenario. And, it becomes even more likely when considering the testimony cited in the Board's opinion. There, Robbins explicitly acknowledged that she "went back to work for Rev-A-Shelf somewhere

---

[6] Robbins reached maximum medical improvement on October 2, 2017.

around August 30, 2017 and [] continued working until [her] resignation in 2018." Likewise, the evidence cited in the ALJ's order denying reconsideration does not support a finding that she returned to work on October 2, 2017.

Simply put, it is unclear when Robbins returned to work. Accordingly, the ALJ's finding that she returned on October 2, 2017 is not supported by substantial evidence. As noted by the Board, the ALJ must make further findings as to the exact date she returned to work, not when she returned to full duty. If it concludes she returned on August 30, 2017, it must properly analyze, as laid out in the Board's opinion, whether TTD benefits are proper. *See Trane Commercial Systems*, 481 S.W.3d at 807.

### *PPD Benefits*

We now turn to whether the Board properly vacated and remanded the ALJ's enhancement of Robbins' PPD benefits by the two-times multiplier pursuant to KRS 342.730(1)(c)2. KRS 342.730(1)(c)2 provides:

> If an employee returns to work at a weekly wage equal to or greater than the average weekly wage at the time of injury, the weekly benefit for permanent partial disability shall be determined under paragraph (b) of this subsection for each week during which that employment is sustained. During any period of cessation of that employment, temporary or permanent, for any reason, with or without cause, payment of weekly benefits for permanent partial disability during the period of cessation shall be two (2) times the amount otherwise payable under paragraph (b) of this subsection. This provision shall not be construed so as to extend the duration of payments.

-10-

Citing *Ball v. Big Elk Creek Coal Company, Inc.*, 25 S.W.3d 115 (Ky. 2000), the Board determined the requirements of KRS 342.140, which describes the method for determining pre-injury average weekly wage, should equally apply to the calculation of post-injury average weekly wage. And, because Robbins failed to satisfy KRS 342.140(5) – setting out the requirement that an employer have knowledge of a claimant's concurrent employment – the earnings from her concurrent employment could not be considered in the calculation of her post-injury average weekly wage.

In *Ball*, the Supreme Court held that KRS 342.730(1)(c)2 requires a comparison of pre-injury and post-injury average weekly wages, as opposed to a weekly review of a worker's earnings.[7] *Id.* at 118. In arriving at its conclusion, the Supreme Court recognized that the General Assembly enacted KRS 342.140 as a method to determine a worker's earnings by computation of the average weekly wage. *Id.* at 117.

We conclude *Ball* is applicable, and "KRS 342.140 must be utilized to determine a worker's post-injury wages under KRS 341.730(1)(c)(2)." *See Garcia v. Cent. Kentucky Processing, Inc.*, No. 2014-CA-001315-WC, 2015 WL 3643436, at *2 (Ky. App. Jun. 12, 2015), *aff'd*, No. 2015-SC-000382-WC, 2016 WL

---

[7] The *Ball* Court was interpreting a previous version of the statute. However, the statutory amendment does not affect this analysis.

2605564 (Ky. May 5, 2016).  Accordingly, because Robbins failed to present any evidence that Rev-A-Shelf was aware of her concurrent employment, she did not satisfy KRS 342.140(5).

We also agree with the Board that Robbins failed to establish that her earnings as a home health aide were in the capacity of an employee rather than an independent contractor.  A claimant's earnings as an independent contractor are not considered when computing average weekly wages.  *See Hale v. Bell Aluminum*, 986 S.W.2d 152, 155 (Ky. 1998) ("Since it has previously been determined that independent contractors are not employees and, thus, fall outside the scope of the Workers' Compensation Act . . . claimant's earnings as an independent contractor . . . should not be added to those wages earned [] in order to compute his average weekly wage.").

Robbins' only argument on appeal is that "the Board made a factual finding that there was no evidence that the Claimant provided her services to the paraplegic individual in any capacity other than an independent contractor, again, clearly a fact-finding determination by the Workers' Compensation Board with no evidence to support that assumption."  This is not a factual finding; it is merely a conclusion that Robbins failed to satisfy her burden.

Accordingly, the Board's order vacating the enhancement of PPD benefits and remanding for additional determinations as set forth in that opinion is affirmed.

## **CONLCUSION**

Based on the foregoing, the Workers' Compensation Board's March 23, 2020 opinion, affirming in part and vacating in part the administrative law judge's order is affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:

Wayne C. Daub
Louisville, Kentucky

BRIEF FOR APPELLEE REV-A-SHELF:

Lyn Douglas Powers
Louisville, Kentucky