# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: JUNE 17, 2021
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0498-WC

PC METRO BOTTLING (PEPSICO)                                      APPELLANT


ON APPEAL FROM COURT OF APPEALS
NO. 2019-CA-1768
V.            WORKERS' COMPENSATION BOARD
NO. 2016-WC-77912


LONNIE FELTNER;                                              APPELLEES
HONORABLE ROLAND CASE,
ADMINISTRATIVE LAW JUDGE
AND WORKERS' COMPENSATION BOARD


**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

PepsiCo appeals from the Court of Appeals' decision affirming the Workers' Compensation Board (the "Board") determination upholding Lonnie Feltner's award for double benefits pursuant to KRS[1] 342.730(1)(c)2 resulting from a negative change in his average weekly wages (AWW) following his injury. For the following reasons, we affirm.

## I. Factual and Procedural Background

While working as a bay driver for Appellant PepsiCo in June 2016, Feltner injured his left shoulder. Because of his injury, Feltner underwent

---

[1] Kentucky Revised Statutes.

surgery for a torn labrum in his left shoulder. Feltner did not return to work until April 2017. Upon his return, Feltner resumed his duties as a bay driver, which included strenuous physical activities such as unloading the truck and stacking PepsiCo products.

In December 2017, Feltner bid on, and was awarded, a new position as an account manager. Feltner testified that he took the new position, in part, because the job required far less from him physically. However, following the shift in job description, Feltner's average wages decreased to below his pre-injury income. A year later, Feltner sought a resolution to his workers' compensation claim. After conducting a hearing, the ALJ[2] concluded that Feltner suffered a 6.8% permanent partial disability rating, and that the reduction in his AWW triggered KRS 342.730(1)(c)2's double benefit provision for as long his income remained less than his pre-injury average.

PepsiCo filed a petition for reconsideration and appealed the ALJ award when its petition was denied. The Board affirmed, and in turn, so did the Court of Appeals.

## II. Standard of Review

Our standard of review in workers' compensation cases is well settled. Appellate courts review the Board's decision only to correct instances in which "[t]he [B]oard has overlooked or misconstrued controlling statutes or precedent or committed an error in assessing the evidence so flagrant as to cause gross

---

[2] Administrative Law Judge. The administrative law judge in this case was Roland Case.

2

injustice." *Tryon Trucking, Inc. v. Medlin,* 586 S.W.3d 233, 237-38 (Ky. 2019) (citing *W. Baptist Hosp. v. Kelly,* 827 S.W.2d 685, 687-88 (Ky. 1992)). However, because Feltner's claim is before this Court purely on questions of statutory interpretation, we are not bound by either the decision of the Court of Appeals or the Board, and our review is *de novo. Ford Motor Co. v. Jobe,* 544 S.W.3d 628, 631 (Ky. 2018).

### III. Analysis

At the core of PepsiCo's appeal is whether KRS 342.730(1)(c)2 requires actual termination, or instead whether a downward shift in wages is sufficient to trigger the statute's double benefits provision. The relevant statutory language is:

> If an employee returns to work at a weekly wage equal to or greater than the average weekly wage at the time of injury, the weekly benefit for permanent partial disability shall be determined under paragraph (b) of this subsection for each week during which that employment is sustained. During any period of cessation of that employment, temporary or permanent, for any reason, with or without cause, payment of weekly benefits for permanent partial disability during the period of cessation shall be two (2) times the amount otherwise payable under paragraph (b) of this subsection.

KRS 342.730(1)(c)2. PepsiCo argues that the plain meaning of "cessation" predicates the relationship between the company and Feltner had to cease completely, if only temporarily, for the provision to apply. We disagree.

In *Toy v. Coca Cola Enterprises,* we discussed the legislative intent in passing KRS 342.730 as having twin goals. The first, being to encourage a partially disabled worker to remain "in the habit of working and earning as much as they are able[,]" while simultaneously incentivizing employers not to

3

relegate injured employees to lesser paying positions. 274 S.W.3d 433, 435 (Ky. 2008); *see also AK Steel Corp. v. Childers*, 167 S.W.3d 672, 676 (Ky. 2005) (stating "one of the primary purposes of Chapter 342 is to encourage an injured employee to return to work"). As we discussed in *Toy*, the obvious legislative preference is for workers to return to the same job and wages as they held prior to their injury. 274 S.W.3d at 676. However, because partially disabled workers will not always be capable of fulfilling the same duties, the legislature crafted a scheme in which the trigger for enhanced benefits was wages. *Id.* The result of the legislature's definitional decision is that employment, as the *Toy* court notes, is not simply decided by asking who signs the injured worker's check. *Id.* Instead, the appropriate inquiry involves asking whether the employee is earning the same or more, on average, as they did prior to being injured. *Id.*

Our analysis of KRS 342.730 requires us to reject PepsiCo's proffered definition of "cessation," requiring a severing of the employee/employer relationship to trigger double benefits. Our conclusion is driven by our understanding of the purpose of KRS 342.730 to encourage the reentry of injured workers to the workforce, and the concomitant duty of employers not to penalize employees for injuries sustained while on the clock. If we adopted PepsiCo's definition the statute would become largely ineffectual because all companies would have to prove to avoid paying out is that the claimant remained, in some capacity, on their payroll. We decline to do so. Instead, we recognize, as we did in *Toy* and *Childers*, that by crafting a rule predicated on

4

wage comparison, the statute necessarily cannot require completely severing the employment relationship.

Having resolved the definitional question posed by PepsiCo, we must now determine whether Feltner was entitled to a double benefit. The relevant facts have been stipulated. Prior to being injured, Feltner's AWW was $1,194.61. When Feltner initially returned to work his AWW was $1,237.69; well above his pre-injury income. However, Feltner's wage decreased in December 2017, when his job duties shifted, to below his pre-injury AWW and never matched or exceeded his pre-injury wages. PepsiCo argues that because Feltner originally enjoyed higher post-injury wages, we should turn a blind eye to the downward shift in his income after December 2017. Its position is belied by the plain language of the statute.

In *Ball v. Big Elk Creek Coal Co.*, we laid out the applicable procedure for determining how KRS 342.730(1)(c)2 should be applied. 25 S.W.3d 115 (Ky. 2000). We reasoned that "pre-and post-injury average weekly wages should be compared[.]" *Id.* at 118. While the statute does not explicitly require weekly reviews of a worker's income, the process must still be responsive to the injured employees working conditions. *See id.* at 117. This position is consistent with the plain language and purpose of the statute. As we explained in *Ball*, the award of "income benefits to injured workers is to provide an ongoing stream of income to enable them to meet their essential needs and those of their dependents." *Id.* If employers could sidestep their statutory responsibilities by simply taking a "snapshot" of an injured employee's wages,

5

KRS 342.730(1)(c)2 would be entirely ineffectual. Consequently, the ALJ in Feltner's case appropriately concluded that Feltner's wages had decreased after December 2017 and awarded him double benefits pursuant to KRS 342.730(1)(c)2.

Finally, PepsiCo makes an ancillary argument that our decision here will have a chilling effect on employers' willingness to bring back injured employees. We reject that argument. Nothing is inherently "unfair[,]" to borrow PepsiCo's term, about requiring an employer to maintain an employee's pre-injury wages if it wants to avoid the double benefit in KRS 342.730(1)(c)2. The employer retains full autonomy over its business decisions, the only issue being the costs associated with those choices. Regardless, the legislature has spoken clearly on the matter, and our role is not to ignore its explicit policy preferences. *See Toy*, 274 S.W.3d at 434 ("[t]he essence of statutory construction is to determine and effectuate the legislative intent[]").

## IV. Conclusion

For the reasons stated above, we affirm the Court of Appeals' decision. All sitting. All concur.

COUNSEL FOR APPELLANT:

Catherine Ann Poole
Goodrum & Downs, PLLC

COUNSEL FOR APPELLEE
LONNIE FELTNER:

Ronnie Merel Slone

6

COUNSEL FOR APPELEE,
HON. ROLAND CASE, ADMINISTRATIVE
LAW JUDGE:

Not represented by counsel

COUNSEL FOR APPELLEE,
WORKERS' COMPENSATION BOARD:

Michael Alvey